NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARROWOOD INDEMNITY CO., | |
| Plaintiff, | Civil No. 09-4814 (AET) |
| v. | **OPINION** |
| METALLO GASKET CO., | |
| Defendant. | |

THOMPSON, U.S.D.J.

## I.     INTRODUCTION

This matter comes before the Court upon Plaintiff Arrowood Indemnity Company's ("Arrowood") Motion for Partial Summary Judgment [docket # 26]. Defendant Metallo Gasket Company ("Metallo") opposes the motion [36]. The Court has decided the motion upon the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiff's motion is granted.

## II.    BACKGROUND[1]

This case arises out of an insurance coverage dispute involving certain defense and indemnity costs paid by Plaintiff for asbestos bodily injury claims and lawsuits filed against Defendant. Metallo is a manufacturer of custom made gaskets, shims, diaphragms, washers, and tower packings. (Amend. Compl. ¶ 9). [13]. Arrowood has issued general commercial liability coverage to Metallo under various insurance policies (collectively, the "Arrowood Policies").

---

[1] Defendant failed to follow the requirement of L. Civ. R. 56.1(a), leaving the Court without a clear impression of what facts are disputed between the parties. Consequently, this Court takes as presented Plaintiff's 56.1 statement. *See Keybank v. Rico*, 2010 U.S. Dist. LEXIS 53197, *6 (D.N.J. June 1, 2010).

1

(*See* Statement of Material Facts, at 2) [30].  Beginning in 1981, Metallo began tendering claims of bodily injury or personal injury allegedly caused by exposure to asbestos-containing products manufactured and distributed by Metallo (the "Underlying Claims").  (Amend. Compl. ¶ 16).

On March 8, 2001, Metallo and Arrowood entered into a Master Bilateral Reservation of Rights and Non-Waiver Agreement ("Non-Waiver Agreement") with respect to the Underlying Claims in which Arrowood reserved the right to withdraw its defense and seek reimbursement for legal fees.  (*See* Armenti Certif., Ex. P).  [29].

On February 7, 2009, Arrowood withdrew from the Non-Waiver Agreement but continued to pay defense and indemnity for the Underlying Claims.  (Amend. Compl. ¶ 28).  Subsequently, on March 19, 2009, Arrowood advised Metallo that during the "Interim Period" (i.e., subsequent to Arrowood's withdrawal from the Non-Waiver Agreement) Arrowood reserved its rights to withdraw from the defense of the Underlying Claims and to seek reimbursement from Metallo for those defense and indemnity payments made during the interim period that were not properly allocated to it under New Jersey law.  (*See* Armenti Certif., Ex. Q).  Arrowood requested that Metallo execute a copy of the letter, indicating its agreement to the terms under which Arrowood would continue to indemnify Metallo during the interim period.  (Def's Opp., ¶ 21).  On April 7, 2009, Metallo executed the letter.  (*See* Armenti Certif., Ex. Q).

On September 17, 2009, Plaintiff filed a Complaint [1] for Declaratory Judgment and for reimbursement from Defendant for a portion of monies paid by Plaintiff for defense and indemnity costs.  After a period of discovery, Plaintiff amended the complaint on September 15, 2010 to limit its request for past costs incurred from March 9, 2001 through the present.  (*See* Amend. Compl. ¶ 2)

Plaintiff now moves for Partial Summary Judgment seeking a ruling declaring that (1)

New Jersey law applies to the apportionment of defense and indemnity costs among Metallo and its insurers; (2) New Jersey law mandates the application of *Owens-Illinois, Inc. v. United Insurance Co.*, 138 N.J. 437 (1994) to the apportionment of defense and indemnity costs among Metallo and its insurers; and that (3) Arrowood is entitled to reimbursement from Metallo for any amounts paid in excess of its *Owens-Illinois* share for the period February 7, 2009 through the present under the Interim Agreement entered into by the parties on April 7, 2009.

### III.   ANALYSIS

#### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted).  In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).  More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party.  *Id.* at 248–49.  The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Properly applied, Rule 56 will "isolate and

dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323–24.

      B.  **Choice of Law**

The Court has jurisdiction in this case pursuant to 28 U.S.C. § 1332(a)(1). Accordingly, while this Court follows federal procedural rules, the Court applies the substantive law of the state in which this Court sits. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under New Jersey choice-of-law rules, "[t]he law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield." *Armotek Indus. v. Employers Ins.*, 952 F.2d 756, 759 (3d Cir. 1991).

In the instant action, there is no genuine issue of material fact that New Jersey law should apply to the coverage issues in this case. Defendant concedes that the procurement, negotiations, underwriting, and issuance of the Arrowood Policies took place in New Jersey between parties based in or operating out of New Jersey. (Def's Opp. Brief ¶¶ 2, 5–7). Despite these concessions, however, Metallo argues that it is unknown "whether New Jersey law applied and/or applies" because it does not know the facts and circumstances of the litigation of the Underlying Claims, and therefore does not know whether New Jersey has or had the most significant relationship to the transaction and the parties. (Def's Opp. Brief 25). Under New Jersey choice of law rules, however, "the law of the place of contracting should ordinarily be applied unless some other state has the 'dominant relationship' with the parties and issues." *NL Industries, Inc. v. Commercial Union Ins. Co.*, 65 F.3d 314, 319 (3d Cir. 1995); *see also State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 417 A.2d 488, 493 (1980). The place of

contracting is ordinarily the place where the parties executed and delivered the insurance policy. *See, e.g.*, *Nelson v. Ins. Co. of N. Am.*, 264 F. Supp. 501, 503 (D.N.J. 1967). To the extent a company from another state uses an insurance broker to negotiate and purchase its insurance policies, the place of contracting is the place where the broker negotiated the policies. *See Diamond Shamrock Chemicals v. Aetna Cas. & Sur. Co.*, 609 A.2d 440, 465 (N.J. 1992). Under either of these definitions New Jersey is properly considered the place of contracting. Defendant has had ample time in discovery to explore the Underlying Claims and has presented no evidence that other states currently have, or have ever had, a more significant relationship to the transaction and the parties.

### C. Application of *Owens-Illinois*

Having held that New Jersey law should apply to the apportionment of defense and indemnity costs among Metallo and its insurers, the Court finds that the apportionment of defense and indemnity costs for the Underlying Claims should be governed by the New Jersey Supreme Court's decision in *Owens-Illinois, Inc. v. United Insurance Co.*, 650 A.2d 974 (N.J. 1994).

In *Owens–Illinois* the New Jersey Supreme Court applied a continuous-trigger theory, which finds that, in order to assess when there is an "occurrence" that triggers insurance coverage for underlying asbestos tort cases, courts may treat the progressive injury or damage as an occurrence within each of the years of a comprehensive general liability policy that was in place during the relevant time period. *Id.* at 980–85.

The *Owens–Illinois* Court further determined that loss should be allocated across policy years in proportion to the amount of coverage available in each policy period, taking into account both the time on the risk and the degree of the risk assumed by the parties, including periods of no insurance when such insurance was available. *Id.* at 993–95.

5

Although Defendant suggests that under *Carter-Wallace v. Admiral Ins. Co.*, 712 A.2d 1116 (N.J. 1998) the *Owens-Illinois* allocation principles should be limited to disputes as between primary and excess insurers (Def's Opp. Brief 39), this argument seemingly has no basis under New Jersey law.  As the New Jersey Supreme Court has made clear, both the insurer and, in certain circumstances, the policyholder, bear the risk of loss with respect to any allocation.  *See, e.g.*, *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004) ("Policyholders who chose to "go bare" or underinsure must sustain the burden of those choices."); *Spaulding Composites Co., Inc. v. Aetna Cas. & Sur. Co.*, 176 N.J. 25, 36 (2003) ("Under …[*Owens-Illinois,*] insurers are allocated losses based on their undertakings, the insured is required to pay its 'aliquot' share of both defense and indemnification on account of years in which it is uninsured or self-insured, and the insured also is responsible for years in which coverage is exhausted or its insurer bankrupt.").

Defendant has set forth no basis why the well-established trigger and allocation methodologies adopted by the New Jersey Supreme Court to address insurance allocation should not govern this dispute.  Therefore, the Court finds that the defense and indemnity costs paid by Plaintiff for asbestos bodily injury claims and lawsuits filed against Defendant are properly subject to the trigger and allocation methodologies adopted in *Owens-Illinois* and its progeny.

**D.  Scope of the Duty to Defend for the Period of February 7, 2009 to the Present**

As noted, *supra*, Arrowood seeks in this motion a ruling that Arrowood is entitled to reimbursement from Metallo to the extent that it paid monies in excess of its allocable share under New Jersey law for the period subsequent to withdrawal from the Non-Waiver Agreement (February 7, 2009 to the present).

Under the terms of the March 19th letter, Arrowood specifically reserved its rights to withdraw from the defense of the Underlying Claims and to seek reimbursement from Metallo for those defense and indemnity payments made during the "Interim period" that are not properly allocated to it under New Jersey law.  Metallo, through its President and current owner, Frederick Haleluk, executed the March 19th letter on April 7, 2009, thereby indicating agreement to the terms under which Arrowood may continue to pay defense and indemnity of behalf of Metallo during this interim period.  Where the terms of a contract are unambiguous, their literal meaning must be applied and their construction is a question of law appropriate for summary judgment. *Digiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 561 (D.N.J. 2002) (citing *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995)).  Metallo has failed to show adequate facts to suggest that the terms of the Interim Agreement should not be upheld.  Thus, the Court finds Arrowood is entitled to reimbursement from Metallo to the extent it paid monies in excess of its allocable share under New Jersey law for the period subsequent to withdrawal from the Non-Waiver Agreement as specified by the terms of the Interim Agreement.

### E.  Metallo's Affirmative Defenses

In its opposition papers, Metallo raises a number of affirmative defenses, including contentions that:  Plaintiff has an absolute duty to defend (*See* Opp. Br. 26–27); Plaintiff's claims are "too late," subject to the defense of laches, and the entire controversy doctrine (*See* Opp. Br. 34–38, 40); and that Plaintiff has acted in bad faith (*See* Opp. Br. 14–15).  These arguments are not properly before this Court.  Metallo has not filed a cross-motion seeking affirmative relief in response to Arrowood's motion.  The federal practice rules of this jurisdiction do not permit affirmative relief in this setting in the absence of the filing of a cross motion for summary judgment.  *See* L. Civ. Rule 56.l(a); *see also Harrington v. All Am. Plazas, Inc.*, 2009 U.S. Dist.

LEXIS 84457, *15 (D.N.J. Sept. 16, 2009) (granting summary judgment for movant and not considering the issue of affirmative defenses, raised in the opposition brief, which were not properly before the Court because opposing party had not filed a cross-motion for summary judgment).

Defendant Metallo has, therefore, failed to raise a genuine issue of material fact precluding partial summary judgment on the grounds raised by Plaintiff.  Defense counsel is cautioned in the future to consult the relevant local rules in crafting its pleadings.

## IV.    CONCLUSION

For the reasons stated above, and for good cause shown, the Plaintiff's Motion for Partial Summary Judgment is granted.  An appropriate order will follow.


                                                                         */s/ Anne E. Thompson*                      
                                                                         ANNE E. THOMPSON, U.S.D.J.

Dated__November 4, 2011_____